UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

KATHLEEN GLASSNER,

        Plaintiff,                      Case No. _____

v.

MERCK SHARP & DOHME CORP.,

        Defendant.
_____/

## NOTICE OF REMOVAL

Defendant Merck Sharp & Dohme Corp. ("Merck" or "Defendant") hereby gives notice that, under 28 U.S.C. §§ 1332, 1441, and 1446, this action is removed from the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, to the United States District Court for the Northern District of Florida, Tallahassee Division. As grounds for removal, Defendant states as follows:

    **1.**    **State Court Action**

Plaintiff Kathleen Glassner initiated an action that is pending in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, styled *Kathleen Glassner v. Merck Sharp & Dohme Corp.*, and designated Case Number 21-CA-000630. Plaintiff filed her Complaint on or about April 4, 2021. A true and correct copy of Plaintiff's Complaint, along with the entire state-court file, is attached as Exhibit A.

    **2.**    **Defendant's Receipt of Plaintiff's Complaint**

Merck accepted service of copies of the Summons and Complaint on April 27, 2021.

3.      **Nature of the Action**

Plaintiff's Complaint asserts claims under the Florida Civil Rights Act ("FCRA"), Chapter 760, Fla. Stat., for alleged age and disability discrimination. *See* Ex. A, Compl. ¶¶ 40-55.

Plaintiff seeks equitable relief; "all legally-available general and compensatory damages and economic loss to Plaintiff"; injunctive relief; attorneys' fees; costs; interest; and "such other further relief as being just and proper under the circumstances, including but not limited to reinstatement." *Id*. at 11. Plaintiff alleges that she suffered "emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits," and further alleges that "these damages have occurred in the past" and "are permanent and continuing." *Id.* ¶¶ 47, 55. Plaintiff also alleges that she is entitled to punitive damages. *Id.*

4.      **Removal of State Court Action**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." This action is removable under 28 U.S.C. § 1441(a) because the district court would have original jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). In addition, venue

is proper in the Tallahassee Division of the Northern District of Florida. Finally, this Notice of Removal is filed in a timely manner.

**5.        Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

a.        Diversity of Citizenship

First, Plaintiff and Defendant are citizens of different states. Plaintiff is a Florida citizen for purposes of 28 U.S.C. § 1332(a). *See* Ex. A, Compl. ¶ 3 ("Plaintiff has been a resident of the State of Florida.").[1] Defendant is a citizen of New Jersey. Under 28 U.S.C. §1332(c)(1), a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. Merck was incorporated in New Jersey, and its principal place of business is in New Jersey. *See* Ex. B, Declaration of Christopher Nigro ("Nigro Decl."), ¶ 4. Because Plaintiff and Defendant are not both citizens of the same state, the diversity requirement is satisfied.

b.        Amount in Controversy

Second, while Defendant denies that Plaintiff is entitled to any damages at all, the amount in controversy exceeds $75,000. "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff

---

[1] "Under the diversity statute, . . . a person is a 'citizen of a state' if he or she is (1) a citizen of the United States and (2) a domiciliary of a state of the United States." *Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, 1116 n.12 (S.D.N.Y. 1982); *see also* BLACK'S LAW DICTIONARY 244 (6th ed. 1990) (citing *Gibbons*).

3

contests, or the court questions, the defendant's allegation." *Dart v. Cherokee Basin Operating Co., LLC*, 135 S. Ct. 547, 554 (2014). Furthermore, "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (internal citation omitted). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue *in the course of the litigation*." *Id.* (emphasis added) (citation omitted).

The FCRA makes available "affirmative relief from the effects of the [discriminatory] practice, including back pay," as well as "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries," punitive damages, and reasonable attorneys' fees. Fla. Stat. § 760.11(5). The FCRA caps only punitive damages, which "shall not exceed $100,000." *Id.* The *Wineberger* case illustrates the nature of the analysis. *Wineberger* involved FCRA claims for age and disability discrimination, as alleged in the instant matter. *Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14–cv–653, 2015 WL 225760, at *1 (M.D. Fla. Jan. 16, 2015). The plaintiff sought "to recover back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and suffering, and mental anguish, pre-and post-judgment interest, costs, and attorney's fees." *Id.* The District Court held that "Defendant has established that Plaintiff's damages more likely than not exceed $75,000." *Id.* at *4. The District Court (1) held that "back-pay damages may be calculated through the proposed date of trial," and accepted the defendant's estimate of a trial date of two years from the filing of the complaint and its calculation of back pay; (2) added twelve months of front pay; (3) "[c]onservatively" added 10% of the $100,000 maximum that the FCRA allows in punitive damages; (4) included $10,000

in attorney's fees "by the date of trial," which the court found was "an extremely conservative estimate of attorney's fees," citing an FCRA case in which $104,799.50 in attorney's fees were awarded; and (5) included compensatory damages for emotional distress, using a range of $5,000 to $30,000 "in a 'typical' age discrimination case, where a plaintiff experiences no physical injury and presents no medical or psychological evidence of emotional pain and suffering." *Id.* at *3–4 & n.3, 4 (citations omitted).

On appeal, the Eleventh Circuit affirmed. *Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 915 (11th Cir. 2016). Although the plaintiff argued that "the district court erred in its calculation of the amount in controversy" because it engaged in speculation, the Eleventh Circuit accepted the district court's estimates of back pay, front pay, compensatory damages, attorney's fees, and punitive damages. *Id.* at *2. The Eleventh Circuit stated that the plaintiff "fail[ed] to account for . . . binding decisions that expressly allow a district court to make reasonable deductions and inferences and to rely on judicial experience." *Id.*;[2] *see, e.g.*, *Schmidt v. The Pantry, Inc.*, Case No. 1:11-cv-228-SPM-GRJ, 2012 WL 1313490, at *4 (N.D. Fla. Mar. 6, 2012) (explaining, in a case involving claims under the FCRA, that "in determining the amount in controversy the Court must take into account that Plaintiff, if successful, could in good faith request a jury to award damages in the range of the jurisdictional amount of this Court. The Court does not need to place a precise calculation on the amount of any award for intangible damages because even assuming a modest award for compensatory damages is added to Plaintiff's

---

[2] Notably, the Eleventh Circuit stated that "a district court must review the amount in controversy at the time of removal," and immediately added that "[a]t the time of removal, [the plaintiff] had alleged several claims for relief and sought recovery for back and front pay, compensatory and punitive damages, and attorney's fees." *Wineberger*, 2016 WL 6994872, at *2. The Eleventh Circuit thus strongly suggested that "review[ing] the amount in controversy at the time of removal" means reviewing the amount in controversy based on the types of relief sought at the time of removal, rather than based only on the amounts that had already accrued at the time of removal. Indeed, the Eleventh Circuit proceeded to hold that "[t]he district court correctly considered front pay"—which constitutes pay that would be owed *after* trial—"because the amount in controversy is dependent on facts at the time of removal" and the plaintiff disavowed her quest for front pay only after the case had already been removed. *Id.* at *3.

5

conservative claim for back wages and Plaintiff's attorney's fees the amount in controversy in this case is well in excess of the $75,000.00 jurisdictional threshold.").

The amount in controversy in this case exceeds $75,000. First, Plaintiff's ostensible back pay is in the hundreds of thousands of dollars. In another FCRA disability discrimination case, the court stated that "back pay may be calculated through the estimated date of trial," and that "[c]ombining evidence (i.e., the rate of Plaintiff's salary) with reasonable extrapolations (i.e., calculating the amount of back pay by estimating a reasonable trial date) is not improper speculation." *Gonzalez v. Honeywell Int'l, Inc.*, No: 8:16–cv–3359, 2017 WL 164358, at *2 (M.D. Fla. Jan. 17, 2017). The court thus accepted the defendant's calculation of two years' worth of back pay, "based on the fact that Plaintiff was terminated approximately one year before the case was removed," and that "the trial in this matter is likely to take place one year from the date of removal." *Id.*

In 2019, at the time Plaintiff alleges her employment ended, Plaintiff's base annual salary was $154,145.00 (approximately $2,956.37 weekly). Ex. B, Nigro Decl. ¶ 5. Plaintiff alleges that she retired on or about November 4, 2019—approximately 80 weeks before the date of this filing. Ex. A, Compl. ¶ 38. Therefore, Plaintiff's ostensible back pay as of the date of this filing is approximately $236,509.60 ($2,956.37 per week for 80 weeks). Adding backpay for an additional year until trial results in a total of $390,654.60. Using an estimated two-year trial date as in *Wineberger*, the potential back pay could total $544,799.60.

Second, "it is reasonable to add one year of front pay to the amount in controversy in an FCRA employment discrimination case." *Gonzalez*, 2017 WL 164358, at *2.[3] A year of front pay

---

[3] The *Gonzalez* court pointed out that the availability of reinstatement instead of front pay "does not discredit Defendant's amount in controversy calculation" because "[r]einstatement is a form of equitable relief," and, "[f]or purposes of calculating the amount in controversy, the value of this relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Gonzalez*, 2017 WL 164358, at *2 n.2 (citation omitted).

6

for Plaintiff would add another $154,145.00, increasing the total with a one-year trial date to $544,799.60, and with a two-year trial date to $698,944.60.

Third, although Defendant specifically denies that Plaintiff would be entitled to recover any compensatory or punitive damages, Plaintiff seeks both. Ex. A, Compl. ¶ 47, 55; Prayer for Relief. "Plaintiff could be awarded up to $100,000 in punitive damages under the FCRA, and Plaintiff has not indicated that she is seeking anything less than the maximum amount of damages." *Gonzalez*, 2017 WL 164358, at *3 (stating that "[t]he Court need not pinpoint the exact dollar figure of [this form] of relief to recognize that [its] value adds thousands of dollars to the amount in controversy"); *Schmidt*, 2012 WL 1313490, at *4 ("Under the FCRA an aggrieved plaintiff may request punitive damages, although the damages are capped at $100,000.00. As is the case when assessing the amount of compensatory damages the Court may look to awards of punitive damages in similar cases. Although it is premature to determine whether a claim for punitive damages would be submitted to a jury, at this juncture there is nothing in the record to suggest that Plaintiff is not seeking the full measure of punitive damages."). "Unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014) (quoting *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (holding that amount in controversy requirement was satisfied where "[a] punitive award exceeding $2.1 million is possible in this litigation")). "Any inquiry into whether [the plaintiff] *would* actually recover these amounts is unnecessary and inappropriate. For the purposes of establishing jurisdiction, it is enough to show that he *could*." *Id.*

---

The court concluded that the front pay calculation was "conservative" "[b]ecause the monetary value of reinstatement would likely equal or exceed that of a year's worth of front pay." *Id.*

And fourth, Plaintiff requests injunctive relief, attorneys' fees, costs, interest, and "such other further relief." *See* Ex. A, Compl. at 11. Thus, although Plaintiff has not alleged an exact total value of the amount in controversy, it may be presumed, based on the pleadings alone, that it exceeds $75,000. *See Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (where the plaintiff has made an unspecified demand for damages in state court, the removing defendant need only establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional amount for diversity jurisdiction).

In sum, because this action is between citizens of different states—Plaintiff is a Florida citizen, and Defendant is a citizen of New Jersey—and the amount in controversy exceeds $75,000, the district court has original jurisdiction under 28 U.S.C. § 1332(a), and Defendant may remove this case to this Court under 28 U.S.C. § 1441(a).

6. **Venue**

The state court case was brought and is pending in Leon County Circuit Court. Therefore, the Northern District of Florida is the federal district court to which this case must be removed, and the Tallahassee Division is the proper division to which the case must be removed. *See* 28 U.S.C. §§ 1441(a) (stating that action "may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending.") & 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . .").

7. **Timeliness of Notice of Removal**

Pursuant to 28 U.S.C. § 1446(b), this removal is timely because 30 days have not elapsed since Defendant accepted service of Plaintiff's Complaint. "The timeline [for removal] is not

8

triggered until the defendant (or an agent) has been formally served or has waived service." *Blair v. Philips Elecs. N. Am. Corp.*, Case No. 8:16-CV-3529-T-30JSS, 2017 BL 42544, 2 (M.D. Fla. Feb. 13, 2017) (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-50 (1999)).

**8.      State Court Pleadings**

Pursuant to 28 U.S.C. § 1446(a), with this Notice, Defendant is simultaneously filing copies of all process, pleadings, and orders existing on file in the state court in this removed action. Copies of these documents are attached to this Notice of Removal at Exhibit A. Further, pursuant to 28 U.S.C. § 1446(d), Defendant has or will file a true and correct copy of this Notice of Removal with the Clerk of the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida. A copy of the Notice of Filing Notice of Removal, without attachments, is attached hereto as Exhibit C.

Dated this 12th day of May 2021.              Respectfully submitted,

/s/Mark E. Zelek
Mark E. Zelek
 Florida Bar No. 667773
 Email: mark.zelek@morganlewis.com
Beth S. Joseph
 Fla. Bar No. 0062952
 Email: beth.joseph@morganlewis.com
Dalisi O. Carrasco
 Florida Bar No. 123634
 Email: dalisi.carrasco@morganlewis.com
Morgan, Lewis & Bockius LLP
600 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: 305.415.3000
eFacsimile: 877.432.9652

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 12, 2021 a copy of the foregoing was served on all counsel of record identified on the Service List below via CM/ECF.

/s/Mark E. Zelek
Mark E. Zelek

**SERVICE LIST**

Marie A. Mattox
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
marlene@mattoxlaw.com
michelle@mattoxlaw.com

*Counsel for Plaintiff*

DB1/ 120683796.3