# Exhibit A

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA

**KATHLEEN GLASSNER,**

    Plaintiff,

v.

**MERCK SHARP & DOHME CORP.,**

    Defendant.

_____/

CASE NO.: 21-CA-   2021 CA 000630

FLA BAR NO.: 0739685

## COMPLAINT

Plaintiff, KATHLEEN GLASSNER, hereby sues Defendant, MERCK SHARP & DOHME CORP., and alleges:

### NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, KATHLEEN GLASSNER, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her age (YOB: 1964), and her actual or perceived disability and/or record of impairment.

4. At all times pertinent hereto, Defendant, MERCK SHARP & DOHME CORP., has been organized and existing under the laws of the State of Florida. At all times pertinent to this

action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and Equal Employment Opportunity Commission. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a fifty-six (56) year old disabled woman, began her employment with Defendant on or about November 1, 1999 and as of July 2016 she held, the position of Oncology Customer Manager until her wrongful constructive termination on November 4, 2019.

7. During her over twenty (20) years of employment, Plaintiff received excellent performance evaluation ranking her in the top fifteen percent (15%) for a majority of those years. She holds a Doctorate degree in Public Health. She has received several awards of recognition. She has never been reprimanded or suspended.

8. Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her age and disability.

9. The disparate treatment and retaliation came at the hands of specifically but not limited to Team Leader David Konicek and HR Representatives Kristen Frank and Christopher Nigro.

10. Plaintiff suffers from a serious medical condition of which Defendant is aware. To wit: Plaintiff suffers from an autoimmune disorder called Diffuse Connective Tissue Disease

2

(AKA Mixed Connective Tissue Disease) and she also suffers from depression. She also has a history of surgeries for other conditions.

11. Defendant was well aware of Plaintiff's conditions due to her requests for time off work and for reasonable accommodations.

12. These conditions impact Plaintiff's ability to perform many substantial life activities including driving long distances. However, her condition did not and would not interfere with her ability to perform her required duties with or without reasonable accommodations.

13. In May 2018, Defendant announced a "representative realignment of geographical responsibilities."

14. Plaintiff's previous geographic assignment covered Tallahassee/Thomasville to North Jacksonville, and south of Jacksonville to Port Orange, with the bulk of her clients residing in Jacksonville. This was a distance of 170 miles from Tallahassee.

15. Plaintiff's new geographic assignment was from Thomasville to Tampa/St. Pete, including Winter Haven and Lake Wales to the west with the bulk of her clients residing in Tampa/St. Pete. This was a distance of 280 miles from Tallahassee.

16. Defendant allows for hardship reviews where a change in assignment is fifty (50) miles greater from the distance of an employee's home than the previous assignment. Plaintiff's change of assignment resulted in more than a 100 mile difference, so she requested a hardship accommodation. HR Rep Kristen Frank falsely claimed that the difference was only thirty-seven (37) miles and denied her accommodation request, saying she was not eligible for a hardship review. Plaintiff requested an explanation as to how Defendant calculated only thirty-seven (37) miles, but Defendant refused.

3

17. On May 9, 2019, Defendant announced another "representative realignment of geographical responsibilities" to become effective on October 1, 2019 which would significantly alter Plaintiff's geographical assignments again. The new geographical assignment began in Gainesville and encompassed Gainesville to Tampa with the bulk of the customer base in Tampa. This assignment required a minimum of two and a half (2.5) hours from her home before reaching her first customer. Also, at the time these realignments were announced, there were new positions being established, one of which was based in the Jacksonville area and Defendant prevented Plaintiff and other oncology employees from applying for the new position, even though that opening was given to a younger employee, Kristi Gee.

18. Defendant made it a point to say that the new assignments were final and subject to absolutely no exceptions.

19. Plaintiff requested another hardship review which was summarily denied.

20. On May 30, 2019, Team Leader David Konicek made an announcement during the team teleconference that he would not help anyone on the team with accommodations because the assignments were final. He was obviously referencing Plaintiff and her hardship request.

21. Plaintiff was told to call HR Representative Frank about her hardship request. But Frank had already wrongfully denied Plaintiff's request once before and Plaintiff did not believe she would be fairly represented, but she called and spoke to Frank on May 30, 2018.

22. During her conversation with Frank, Plaintiff spoke about how the assignment presented difficulties given her condition and that an accommodation of allowing her to be re-assigned to the Jacksonville cluster would fix the issue. When she made the request, there was an open position based out of Tallahassee which Plaintiff could have taken, but Defendant denied Plaintiff's request and refused to engage in an interactive process with her. Instead, Defendant told

4

Plaintiff that the new positions were final, and that she could accept the position or quit but no separation packet or compensation would be provided.

23. Plaintiff then filed internal complaints with HR and her Team Leader David Konicek with reasonable requests made to accommodate her, all of which were denied. Plaintiff was told that HR was within their rights to force Plaintiff to accept the new position because this was a national reorganization.

24. Despite the clear no-exceptions policy that Defendant applied to Plaintiff, Defendant treated Plaintiff's significantly younger non-disabled co-worker Kristi Gee more favorably. Specifically, Defendant granted Gee an exception for her geographical assignment, allowed Gee to switch to the same Jacksonville position that Plaintiff requested, and found another employee to cover Gee's vacancy in the Orlando position. This is a clear difference in treatment as compared to Defendant's no changes policy. When other co-workers asked Gee about her special treatment, she said she could not talk about it. Further, Defendant allowed another worker in the Carolinas to have a smaller assignment because of his medical condition which limited his capacity to be in a car for long periods. These are but some of the specific examples of other employees who have been treated more favorably.

25. Defendant also has a retirement policy where the majority of the benefits (75%) vest when the employee reaches the age of fifty-five (55). Team Leader Konicek incessantly asked Plaintiff about her age, when she would turn fifty-five (55), and when she planned to retire.

26. Plaintiff did not intend to retire anytime soon and wanted to continue working for Defendant. In fact, Plaintiff tried to apply for several positions for which she was qualified within Defendant but was offered none of them despite her stellar qualifications. Moreover, Defendant actively prohibited Plaintiff from applying for any vacant or newly created positions within the

oncology division and refused to promote her elsewhere despite the fact that Plaintiff's doctorate more than qualified her.

27. For example, between January of 2018 and May of 2019 Plaintiff applied for three (3) director or associate level positions in other divisions and was not promoted to any of them despite Defendant's interviewing director Colleen DeVaul admitting Plaintiff was a strong candidate for one of the positions. By way of further example, Defendant refused to allow Plaintiff to apply for a vacant Customer Manager position for the Jacksonville cluster and for the tumor alignment position also out of Jacksonville within the oncology division, despite her strong credentials and experience.

28. In May 2019, the Defendant underwent a restructuring within the medical affairs division where Plaintiff was concentrating her job search and Defendant communicated to her that there were not going to be any positions available in the near to distant future within that part of the organization.

29. On June 4, 2019, Plaintiff and Team Leader Konicek had a customer meeting scheduled in Tampa. Plaintiff booked a flight to Tampa, which she was allowed to do under Defendant's policies, but had been delayed due to a flight delay which was out of her control. Konicek met with Plaintiff and criticized her because he had to cover the meeting until she arrived. He said that she needed to give him a written plan of how she intended to be in the Tampa cluster for five (5) days out of the week and do so in a way where flight delays would not affect her travel.

30. During this time, Plaintiff has an internal complaint pending, in part, about the failure to accommodate her. Around or shortly after the June 4, 2019 date, Plaintiff had a call with the person investigating her complaint scheduled for the next day, so she was not sure how to respond to Konicek and whether the meeting on her complaint would mean she was no longer

assigned to the Tampa cluster. Therefore, she responded to him stating that she would not be able to because did not yet know how she was going to be able to make such a commitment without help from Defendant.

31.     Team Leader Konicek responded telling Plaintiff if she was unable to provide him with said written plan, then she was resigning her position.

32.     Plaintiff responded that she was not resigning from her position.  She explained that the position caused a significant number of problems given her condition, and that she was seeking an accommodation from Defendant. He then continued to talk about retirement planning and options.

33.     Konicek refused to listen to Plaintiff about her need for an accommodation by being in another area of the Defendant and incessantly pushed for her to retire caused her visible distress, which Konicek noticed. Rather than back off of his forced retirement idea, he recommended Plaintiff have a drink of wine when she got back to her hotel room, which she stated she could not do because of her medication, and for her to look up IRS rule I.R.C. 72T, which would allow her to start taking distributions at age fifty-five (55) without penalty.

34.     Between the second week of July, 2018 and the second week of October 2018, Plaintiff was out on disability leave for lateral epicondylitis and osteotomy surgery.

35.     Plaintiff turned fifty-five (55) on September 4, 2018, which meant as of that date, 79% of her pension had vested and she was eligible to retire as of October 1, 2018. Plaintiff never expressed an interest in retirement, and, in fact, she said exactly opposite and expressed her intention of staying with Defendant and securing a higher position which would allow her to use her doctorate.

36. After returning to work, Plaintiff submitted a formal ADA workplace accommodation request to be switched into a position consistent with her restrictions. Again, Defendant denied Plaintiff's request and failed to engage in an interactive process with her which forced Plaintiff to retire.

37. Defendant has discriminated against Plaintiff due to her age and disability and targeted her for a forced retirement at age fifty-five (55) which has never been Plaintiff's intention.

38. Therefore, on November 4, 2019, Defendant forced Plaintiff into an early retirement she did not intend or want to take. Defendant did so because of Plaintiff's age and her actual or perceived disability and/ or record of impairment. It was physically impossible for Plaintiff to perform her job duties with Defendant with the change in her geographical assignments and the failure to place Plaintiff into a reasonable position she could perform.

39. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## AGE DISCRIMINATION

40. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41. This is an action against Defendant for discrimination based upon age brought under Chapter 760, Florida Statutes.

42. Plaintiff has been the victim of discrimination on the basis of her age in that she was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her age.

43. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff

or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

44. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

45. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

46. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon age in violation of Chapter 760, Florida Statutes.

47. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief and to punitive damages under Chapter 760, Florida Statutes.

## COUNT II
## DISABILITY DISCRIMINATION

48. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

49. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

50. Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

51. Defendant is liable for the differential treatment and its refusal to accommodate and engage in the interactive process with Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

52. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

53. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's constructive termination/forced retirement.

54. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment under the laws enumerated herein.

55. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These

damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 2nd day of April 2021.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SECOND</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>   COUNTY, FLORIDA

<u>KATHLEEN GLASSNER</u>
Plaintiff

Case # <u>  2021 CA 000630  </u>
Judge _____

vs.
<u>MERCK SHARP DOHME CORP</u>
Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☐ $30,001- $50,000
- ☐ $50,001- $75,000
- ☐ $75,001 - $100,000
- ☒ over $100,000.00

### III.   TYPE OF CASE     

(If the case fits more than one type of case,  select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 2 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☒ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation


**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   1

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Marie A Mattox             Fla. Bar # 739685
           Attorney or party                       (Bar # if attorney)

Marie A Mattox                  04/04/2021
(type or print name)               Date

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

**KATHLEEN GLASSNER,**

CASE NO.: 21-CA-   2021 CA 000630
FLA BAR NO.: 0739685

    Plaintiff,

v.

**MERCK SHARP & DOHME CORP.,**   **SUMMONS**

    **Defendant.**
_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

    **MERCK SHARP & DOHME CORP.**
    **C/O CT CORPORATION SYSTEM – REGISTERED AGENT**
    **1200 S. PINE ISLAND ROAD**
    **PLANTATION, FL 33324**

    Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.**, Plaintiff's attorney, whose address is **203 North Gadsden Street, Tallahassee, FL 32301**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

    DATED on _____, 2021.



CLERK OF THE CIRCUIT COURT

By:_____   04/05/2021

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

**KATHLEEN GLASSNER,**

    Plaintiff,

v.

**MERCK SHARP & DOHME CORP.,**

    Defendant.

_____/

CASE NO.: 21-CA-630
FLA BAR NO.: 0739685

## WAIVER OF SERVICE OF PROCESS

On behalf of Defendant, **MERCK SHARP & DOHME CORP.**, I acknowledge receipt of your request that Defendant waive service of process in Kathleen Glassner v. Merck Sharp & Dohme Corp.; Case No. 21-CA-630, Leon County Circuit Court. I acknowledge receipt of a copy of the complaint, two copies of this waiver, and a means by which I can return the signed waiver to you without cost to me.

On behalf of Defendant, **MERCK SHARP & DOHME CORP**, I agree to save the cost of service of process and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Fla. R. Civ. P. 1.070.

If I am not the Defendant to whom the notice of lawsuit and waiver of service of process was sent, I declare that my relationship to the entity or person to whom the notice was sent and my authority to accept service on behalf of such person or entity is as follows: I am an attorney representing Defendant, **MERCK SHARP & DOHME CORP**, and have authority to accept service.

Defendant, **MERCK SHARP & DOHME CORP**, acknowledges that it will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for any

objections based on a defect in the summons or in the service of the summons.

On behalf of Defendant, **MERCK SHARP & DOHME CORP**, I understand that a judgment may be entered against Defendant, **MERCK SHARP & DOHME CORP**, if a written response is not served upon you within 30 days from the date I executed the request for waiver of service of process.

DATED this 27 of April, 2021.

Respectfully submitted,

/s/ Mark E. Zelek
Morgan, Lewis & Bockius LLC
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27 day of April, 2021, this waiver was served by electronic mail to the following attorney of record for Plaintiff:

Marie A. Mattox, Esquire
MARIE A. MATTOX, P. A.
203 N. Gadsden Street
Tallahassee, FL 32301
marie@mattoxlaw.com
secondary emails:
marlene@mattoxlaw.com

/s/ Mark E. Zelek